THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. PETER VILLIANO, KNOWN ALSO AS PETEY WHITE, DEFENDANT-APPELLANT.

Submitted October 7, 1947—Decided May 18, 1948.

Before CASE, CHIEF JUSTICE, and Justice BURLING.

For the plaintiff-respondent, *Manfield G. Amlicke,* Prosecutor of the Pleas of Passaic County.

For the defendant-appellant, *Bernard L. Stafford.*

The opinion of the court was delivered by

BURLING, J.   This is an appeal from a judgment of the Court of Quarter Sessions of Passaic County whereby the appellant was sentenced to be confined in the State Prison for the maximum term of three years and the minimum term of two years upon his conviction by a jury of receiving and buying stolen property, to wit: One blue steel revolver. The appeal has been brought pursuant to *R. S.* 2:195A–1, *et seq.,* and the amendments thereto. The defendant has also brought up not only his bill of exceptions and assigned errors pursuant to *R. S.* 2:195–14 and 2:195–15, but has also brought up the record for review under *R. S.* 2:195–16. The bill of exceptions, grounds of appeal, assignments of error and specifications of causes for reversal each contain twenty-seven separate items which are all identical.

The errors complained of all go to the charge of the trial court, refusal to charge certain requests, the denial of motions for a directed verdict of acquittal and that the verdict is against the weight of the evidence.

Evidence was presented from which the jury might find: That four burglars, Marinnocio, Massaro, Mastroberti and Knight, had broken into a restaurant in Newark on September 20th, 1945, and had taken certain items, including the revolver in question. That at 11 o'clock in the forenoon on September 21st, 1945, Marinnocio, in the company of Mastroberti and Massaro, met the defendant at the latter's pool room in the City of Paterson. Marinnocio, who had not met Villiano prior thereto, was introduced to him by Mastroberti. Marinnocio thereupon informed Villiano that he had a gun that he wanted to sell whereupon Villiano asked Marinnocio to come with him into the back room which adjoins the pool room. In the back room, Marinnocio showed the .38 blue steel Colt revolver to Villiano and told him that he wanted $50 for the same. Villiano "talked about the price" and finally said, "I'll tell you what I'll do, I will give you $17 and my gun." Villiano then took an old gun and showed it to Marinnocio, who agreed to the proposal; the guns were exchanged and $17 was paid by the defendant to Marinnocio. That the defendant made no inquiry of Marinnocio concerning where the latter had obtained the gun; whether or not he had lawful title thereto and was entitled to lawful possession thereof; and no receipts were given either for the money or the guns.

The testimony of these four burglars was the major part of the state's case, the only other witness being Fucci, the original owner of the revolver, who testified as to its value.

The defendant Villiano who claimed that he did not know the names of Marinnocio and his two confederates, denied that he had purchased the gun. He admitted receiving possession of the gun from Marinnocio but stated that it was a transaction in the nature of a loan, whereby he loaned the sum of $17 and an old gun to Marinnocio and accepted the .38 blue steel Colt revolver as security therefor. Villiano admitted that within eight or nine days thereafter he gave the gun to a man bearing the first name of "Lenny" but his last name he could not recall. Villiano also admitted that after he gave the $17 and the old gun to Marinnocio and received the .38 blue steel Colt revolver, he said to the group, "Now, look, I don't want to get in no trouble now." He also admitted that his

suspicions were aroused when the three young men came to his pool room, since "they walked in a sort of a rough way," and he "figured they might go out and use the gun," and that "they might go out and shoot somebody."

At the trial, defendant brought out on a cross-examination that each of the four named individuals had been convicted of crime and when he took the stand it was elicited from him upon cross-examination that he, too, had been convicted of crime.

Defendant urges in point one of his brief (ground of appeal 9) that the court erred in charging the jury as follows:

"Evidence has been introduced to show that witnesses for the state and the defendant have been convicted of crimes. The purpose of this is to *neutralize* the testimony and you should take this into consideration when you weigh the evidence, and as the sole judges of the credible testimony you should weigh and evaluate that evidence with this consideration in mind, that they have been convicted of crimes." (Italics supplied.)

In this charge the court fell into reversible error and the defendant suffered manifest wrong or injury.

The statute (*R. S.* 2:97–13) reads as follows:

"For the purpose of affecting the credibility of any witness, his interest in the result of the action, proceeding or matter or his conviction of any crime may be shown by examination or otherwise, and his answers may be contradicted by other evidence. Conviction of crime may be proved by the production of the record thereof, but no conviction of an offender shall be received in evidence against him in a civil action to prove the truth of the facts upon which the conviction was based."

The error into which the trial judge fell was no doubt caused by the looseness with which the words "neutralize," "impeach" and "affect the credibility" have been used. Many of the cases using the word "neutralize" have followed *State v. D'Adame* (*Court of Errors and Appeals,* 1912), 84 *N. J. L.* 386. In that case Mr. Justice White speaking for a unanimous court said (at *p.* 394):

"We think, however, that the evidence was admissible for another purpose, and that was as tending to neutralize, *i. e.,* to "discredit," the *adverse* effect of Knight's unexpected failure, when testifying for the state, to identify the defendant."

The *D'Adame* case has been cited many times since its inception; for some instances, *State* v. *Kysilka* (*Court of Errors and Appeals,* 1913), 85 *N. J. L.* 712; *State* v. *Bricker, Jr.* (*Court of Errors and Appeals,* 1923), 99 *Id.* 521; *Moon* v. *Lewis* (*Court of Errors and Appeals,* 1936), 116 *Id.* 521; *State* v. *Guida* (*Supreme Court,* 1937), 118 *Id.* 289; *affirmed,* (*Court of Errors and Appeals,* 1937), 119 *Id.* 464.

However the *D'Adame* case as well as many of the cases following it were those which arose out of situations where one party or the other was attempting to avoid the effect of unexpected and unfavorable testimony from one of its own witnesses, and to which that party had pleaded surprise.

The distinction between that situation and the instant case is important.

It is obvious that this word is correctly used when applied to the cases of surprise and when one party seeks to wipe the slate clean of unfavorable testimony of his own witness. In a wider sense every litigant attempts to wipe the slate clean of testimony offered by his adversary but it is apparent that scope is too broad.

The word "neutralize" was properly employed in *State* v. *Bricker, Jr., supra,* to indicate the scope of cross-examination by the state of its own witness who became suddenly hostile.

In *State* v. *Guida, supra,* the trial court charged "the statement is introduced to neutralize previous testimony given here on the stand by the witness Silano. In so far as it contradicts anything he said on the stand it is effective to neutralize that, to wipe it off the slate, to wipe the slate clean of it, that is, according to what the facts may be believed * * *." This definition was approved by the Supreme Court and the Court of Errors and Appeals. Thus if the testimony of Marinnocio, Massaro, Mastroberti and Knight and defendant were all effaced by "neutralization" then the only evidence left on the record was that of Fucci, who only testified as to the value of the revolver, so that under that view the

conviction of defendant was upon no evidence at all. Such a *reductio ad absurdum* is beyond the purview of the statute.

In *Max* v. *Kahn (Court of Errors and Appeals,* 1917), 91 *N. J. L.* 170, the court said (at *p.* 172) :

"Conviction of crime may or may not affect the credibility of a witness; and whether in a given case it does or does not is not a question of law to be decided by the court, but a question of fact for the jury. It was so held by this court in *State* v. *Henson,* 66 *N. J. L.* 601."

Defendant in his brief attempts to distinguish between "impeachment," "discredit," "contradict" and "affecting the credibility of the witness." While we do not doubt that these words are distinguishable, *State* v. *Lerman (Court of Errors and Appeals,* 1930), 107 *N. J. L.* 77, it is not necessary to the instant case to go so far. All of the above words are clearly and obviously of a different nature than "neutralize."

We have considered the other grounds of appeal which have been argued and conclude there is no merit in them. The judgment is reversed and a new trial is ordered.